IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Warren W. WOOD, Attorney at Law.

Supreme Court

*No. 84-067-D. Argued November 27, 1984.—*
*Decided February 27, 1985.*
(Also reported in 363 N.W.2d 220.)

For the appellant, Warren W. Wood, there were briefs by *Daniel W. Hildebrand, Amanda J. Kaiser* and *Ross & Stevens, S.C.,* Madison, and oral argument by *Mr. Hildebrand.*

For the Board of Attorneys Professional Responsibility there was a brief and oral argument by *Allen T. Trapp,* La Crosse.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

Attorney Warren W. Wood appeals from the recommendation of the referee that his license to practice law in Wisconsin be suspended for sixty days for having communicated directly with an adverse party without the knowledge or consent of that person's attorney and for having made misrepresentations to the adverse party concerning a pending divorce action in which he represented the husband. Attorney Wood admitted having engaged in unprofessional conduct but attributed that conduct to alcoholism, which he argues should mitigate the seriousness of that misconduct and warrant the imposition of less severe discipline, including the imposition of conditions on his continued practice of law which specifically address his alcoholism. Because the referee

made no finding that the misconduct was caused by Attorney Wood's alcoholism, we determine that a sixty-day suspension of Attorney Wood's license to practice law is appropriate discipline under the circumstances of this case.

Attorney Wood was admitted to practice law in Wisconsin in 1973, and practices in New Richmond. The facts in this proceeding are not disputed. In February of 1983, he was retained by a close personal friend to represent him in a divorce action which he had commenced against his wife. On June 2, 1983, Attorney Wood, his client, his client's wife and her attorney held a settlement conference at which a tentative agreement was reached concerning custody of the parties' minor children and property division. It was then agreed that legal custody of the children would be shared by both parents, with their physical custody remaining with the mother.

In the late hours of June 9, 1983, Attorney Wood appeared at the wife's home, asking to speak to his client. The parties to the divorce had been living together occasionally while the divorce was pending, although the husband maintained a separate residence. The client was not there, and the woman allowed Attorney Wood to enter her home at his request. The two of them had a conversation during which Attorney Wood made sexual advances, which were rejected.

Attorney Wood left the house momentarily to get cigarettes from his car, and he returned to the home and began discussing the divorce case. He told the woman that he had hired a private investigator from whom he had obtained evidence on her having had an extramarital affair. He told her that he had paid the investigator $3,800 and stated that the investigator had been following her and had taken pictures of her. Attorney Wood also told her that her telephone had been tapped and that he had a file some three or four inches thick on her. He stated that it was his client's and his intention to obtain

custody of the parties' children for the husband and suggested that she was not a fit person to have their custody. Attorney Wood's visit lasted about one hour, terminating when Attorney Wood left voluntarily.

Attorney Wood proceeded to his client's apartment and told his client that he had visited his wife and made sexual advances to her. Following that conversation, the client went to his wife's home and assured her that there was no understanding between him and Attorney Wood to establish her unfitness as a parent in order to obtain custody of their children. On prior occasions the client had told his wife that there was a private investigator checking on her, tapping her telephone and taking pictures.

Attorney Wood withdrew from representing his client in the divorce action six days after this incident, and the parties ultimately divorced. On September 19, 1983, Attorney Wood telephoned the wife, again stating that he wished to speak to her husband, and he apologized to her for his actions of the night of June 9. He also told her that the statements he had made to her concerning his efforts to obtain evidence of her unfitness were untrue.

In this disciplinary proceeding, Attorney Wood contended that his conduct was directly caused by his alcoholism. He also claimed to have been intoxicated when he visited his client's wife. However, the woman testified that during his visit she observed no signs that he had been drinking. The referee, the Honorable Rodney Lee Young, Reserve Judge, found that Attorney Wood had drunk alcoholic beverages prior to and after playing in a softball game, after which he visited his client's wife.

Evidence was introduced at the hearing concerning Attorney Wood's alcoholism and his efforts at rehabilitation. Attorney Wood completed a four-week outpatient alcohol rehabilitation treatment program at St. Mary's Hospital in Minneapolis in February, 1983, but he resumed drinking the following April. He voluntarily

reentered treatment at St. Mary's as an outpatient on June 23, 1983, following the incident with the wife of his client, and that treatment continued through July, 1983.

On September 19, 1983, Attorney Wood resumed drinking, and it was then that he telephoned his former client's wife, apologized for his conduct in June and told her that in fact he had not hired an investigator or compiled evidence against her. On September 22, 1983, Attorney Wood resumed alcohol rehabilitation after-care and has been attending Alcoholics Anonymous meetings since that time.

Dr. George A. Mann, vice-president of St. Mary's Hospital and Rehabilitation Center, and David Steineck, a drug and alcohol counselor at St. Mary's, each of whom had treated Attorney Wood for alcoholism beginning in January, 1983, testified that his conduct was the result of an alcoholism-induced intoxication. They testified that Attorney Wood does not behave in an unethical, illegal, or immoral way unless he is intoxicated and, further, that he would not have acted as he did with his client's wife had he not been under the influence of alcohol.

In the course of the disciplinary proceeding and on appeal, Attorney Wood has taken the position that his alcoholism is and should be considered a mitigating factor, not a defense to the charges of unprofessional conduct. He argued that the disciplinary process should be used constructively to rehabilitate an attorney who, in good faith, seeks to control the disease which caused the misconduct. Rather than prohibiting the alcoholic's practice of law, he argued, the court should impose discipline which encourages the alcoholic attorney's rehabilitation from alcoholism.

It is Attorney Wood's position that his alcoholism should be considered no less a mitigating factor than undergoing psychiatric treatment, *Disciplinary Proceedings Against Pump*, 109 Wis. 2d 588, 326 N.W.2d 773

(1982), and that a 60-day suspension of his license would be inconsistent with discipline imposed in a proceeding in which the attorney was found to have been medically incapacitated by reason of alcoholism. *Medical Incapacity Proceedings Against Gavic,* 116 Wis. 2d 374, 342 N.W.2d 244 (1984).

Attorney Wood's reliance on attorney medical incapacity proceedings is misplaced. Our attorney professional responsibility rules provide that an attorney's license to practice law is subject to suspension or conditions for a medical incapacity "upon a finding that because of mental infirmity, mental illness or addiction to intoxicants or drugs, the attorney should not be permitted to practice law because of the danger to the interests of his or her clients and the public." SCR 21.07(2). There has been no showing here that Attorney Wood's practice of law was adversely affected by his alcoholism, save for the isolated instance of misconduct with the wife of a personal friend whom he was representing. The referee explicitly found that such misconduct did not qualify as medical incapacity.

Attorney Wood also attempted to distinguish his case from two other attorney disciplinary proceedings in which we rejected alcoholism in mitigation of misconduct for the reason that no causal connection had been established between the attorney's alcoholism and the misconduct. *Disciplinary Proceedings Against Glasschroeder,* 113 Wis. 2d 672, 335 N.W.2d 621 (1983), and *Disciplinary Proceedings Against Peckham,* 115 Wis. 2d 494, 340 N.W.2d 198 (1983). In support of his position Attorney Wood relied on the expert testimony adduced at the hearing that his misconduct was caused by alcoholism. However, the referee made no finding that Attorney Wood's misconduct was the result of alcoholism.

On appeal from the report and recommendation of a referee in an attorney disciplinary proceeding we do not conduct a *de novo* review; we accept the referee's findings,

provided they are not clearly erroneous. *Disciplinary Proceedings Against Swartwout,* 116 Wis. 2d 380, 342 N.W.2d 406 (1984). Here the referee did not find that Attorney Wood's misconduct was not caused by alcoholism; neither did he find that it was: he made no finding whatsoever on that issue. Consequently, we will not make a finding that the referee could have made on the evidence before him but did not.

Attorney Wood also argued that in lieu of suspending his license, we should consider imposing conditions on his continued practice of law such as we imposed in *Medical Incapacity Proceedings Against Fleming,* unreported, Case No. 83–1582–D, decided September 1, 1983. The conditions suggested are those proposed by Dr. Mann in a medical report introduced into evidence at the disciplinary hearing. Those conditions include complete abstinence from alcohol, continued weekly attendance at Alcoholics Anonymous meetings, monthly contact with Lawyers Concerned for Lawyers, attendance at after-care and post-treatment sessions as recommended by St. Mary's, continued counselling sessions with Dr. Mann, regular medical examinations, and periodic reports of Attorney Wood's progress in rehabilitation to the Board of Attorneys Professional Responsibility. Attorney Wood also suggested that we consider conditioning his continued practice on supervision of that practice by another attorney.

We are urged to consider alcoholism as a disease and to show leniency toward an attorney who has engaged in unprofessional conduct as a result of alcoholism. Where an attorney has established sincere rehabilitation efforts and an ability to control the disease, we are asked not to suspend his license as discipline for misconduct but to impose conditions reasonably calculated to assist in his rehabilitation.

Alcoholism does not excuse an attorney's unprofessional conduct. An attorney found to have violated the Code of Professional Responsibility, SCR chapter 20, is subject to discipline even though that attorney was suffering from alcoholism at the time of the misconduct. Nevertheless, in appropriate circumstances, the disease of alcoholism may properly be considered in mitigation of the severity of the discipline to be imposed for misconduct.

However, the case before us does not present that issue. While the referee specifically found that Attorney Wood had taken a course of treatment for alcoholics at St. Mary's Rehabilitation Center six months prior to the time of his misconduct and found that Attorney Wood drank some alcoholic beverages during the evening when his misconduct occurred, he made no finding that the misconduct was caused by alcoholism. Further, the referee made no finding that Attorney Wood was, in fact, suffering from alcoholism, although in his report to the court he made observations concerning Attorney Wood's drinking, specifically, that immediately following the incident with his client's wife, Attorney Wood "admitted of his misdeeds and very convincingly undertook ways to combat his drinking habits and to guard against a repetition of such non-professional conduct."

In his observations, the referee also stated that he had given careful consideration to the expert testimony concerning Attorney Wood's alcoholism and rehabilitation efforts and considered it in mitigation. However, on the state of this record, we determine that alcoholism is not a mitigating factor because there has been no finding that the misconduct was caused by alcoholism. Indeed, there has been no finding that Attorney Wood was suffering from alcoholism at the time of the misconduct, notwithstanding the referee's explicit consideration of the expert testimony on that issue.

We are not adverse to imposing appropriate conditions on the continued practice of law of an attorney whose misconduct was caused by alcoholism and who has demonstrated sincere and successful efforts at rehabilitation, but that is not the case before us. The referee found that, after consuming an unspecified quantity of alcoholic beverages, Attorney Wood discussed a divorce proceeding with an opposing party without the presence or consent of her attorney, in violation of SCR 20.38(1), and misrepresented facts to her concerning matters pertinent to the divorce proceeding, in violation of SCR 20.04(4). There was no finding that this misconduct was caused by alcoholism. Consequently, while we accept the referee's findings of fact and conclusions of law, we do not consider alcoholism a mitigating factor here, as the referee did.

We agree with the referee that a suspension of Attorney Wood's license to practice law is appropriate discipline under the circumstances of this case and we conclude that Attorney Wood's misconduct warrants a sixty-day suspension of his license. We accept the referee's recommendation that Attorney Wood be required to pay the costs of the disciplinary proceeding.

IT IS ORDERED that the license of Warren W. Wood to practice law in Wisconsin is suspended for a period of sixty days, commencing April 1, 1985.

IT IS FURTHER ORDERED that Attorney Warren W. Wood comply with the provisions of SCR 22.26 concerning the requirements of a person whose license to practice law in Wisconsin has been suspended.

IT IS FURTHER ORDERED that within ninety days of the date of this order Attorney Warren W. Wood pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding in the amount of $5,821.30, provided that if the costs are not paid within the time specified and absent a showing by Attorney Wood of his inability to pay those costs within that time, the license

of Attorney Warren W. Wood to practice law in Wisconsin shall be suspended until further order of the court.

IT IS FURTHER ORDERED, pursuant to the referee's recommendation, that the medical report admitted into evidence as Exhibit 9 shall be sealed, marked confidential, and subject to review only by order of the court.

WILLIAM G. CALLOW, J. (concurring). I concur in the majority opinion that Attorney Wood should be disciplined for his unprofessional conduct, and I do not find the order suspending him from the practice of law to be unreasonable.

I write because I believe in this case the protection of the public requires this court to recognize the danger to the public which exists if a person suffering from alcoholism does not properly manage his life by avoiding the use of alcoholic beverages.

In spite of the absence of a finding by the referee that the misconduct was the result of alcoholism, I believe the record establishes that Attorney Wood is an alcoholic. In light of Attorney Wood's admitted and medically established alcoholism, the protection of the public upon his return to the practice of law after the sixty-day suspension requires that for three years his license to practice law be subject to the conditions set forth by his physician. Dr. George A. Mann, in his medical report concerning Attorney Wood, which was offered into evidence by Attorney Wood, stated: "Since alcoholism by its basic nature is characterized by a significant rate of recidivism, it would be critical for an individual with Mr. Wood's history to put into place a system of safeguards that would neutralize or substantially reduce the statistical chances for a reoccurrence of the acute stages of his illness."

I would order, as a condition of retaining his license to practice law for three years following his reinstate-

ment, that he be required to adhere to the ten conditions set forth by Dr. Mann as follows:

"A. That he would comply with the provisions of the code of professional responsibility.

"B. Maintain complete ongoing abstinence from alcohol and all mood changing or psychotropic substances.

"C. Attend at least one Alcoholics Anonymous meeting per week.

"D. Interface at least monthly with Lawyers Concerned for Lawyers.

"E. Attend Aftercare and post treatment sessions as recommended by St. Mary's Rehabilitation Center.

"F. Continue to see Dr. George Mann on a regular basis for ongoing counseling sessions.

"G. To receive quarterly reports from Dr. George Mann to appropriate individual or individuals appointed by the court reporting Mr. Wood's continued progress and compliance with all recommendations.

"H. Supply waivers as would be necessary to verify that all recommendations of the treatment center are followed.

"I. Submit to a medical examination every six months for a recommended period (i.e. three years) and authorize and direct his physician to submit the results of such an examination to the Board.

"J. If Attorney Wood would fail to comply with these stipulations, the Board would have the right to seek a suspension of his license for failure to comply."

Should it be determined that Attorney Wood has failed to substantially adhere to the conditions during the three-year period following reinstatement, I would suspend his license to practice law until this court determines that he has been rehabilitated and no longer presents a danger to clients, the courts, and the public.

STEINMETZ, J. (concurring). I concur in the *per curiam* opinion but write separately to state my disagreement with the concurring and dissenting opinions. I would not set conditions for Attorney Wood's return to

the practice of law after his suspension as suggested by the concurring opinion, because it would discourage attorneys from coming forward and asserting alcoholism as a mitigating factor or complete defense to the ethics violation charged and I would not find that alcoholism caused the misconduct as suggested by the dissenting opinion, since the referee made no finding as to the causal relation between the misconduct and the alcoholism and this record does not allow this court to make that determination here on review.

Moreover, I would not use this information brought forth by Attorney Wood to set conditions for the practice of law in addition to a suspension *or* in addition to a stayed suspension. To do the former, as suggested by the concurring opinion, would cause other attorneys who could assert alcoholism as a defense or exonerating condition to hide the true facts and to challenge the claimed ethics violations on other grounds. To do the latter in this case, as suggested by the dissenting opinion, would mislead other attorneys as to the requisite standard of proof of causal relation between the alcoholism and the ethics violation. I believe, depending upon the actual circumstances and the gravity of the violation, where there is proof of alcoholism and a causal relation between that alcoholism and the misconduct, a public reprimand with conditions for the continuing practice may be the appropriate discipline to be ordered. This discipline would not discourage alcoholics from coming forward with evidence and admitting their alcoholic condition and would satisfy the interest of protecting the public and encourage rehabilitation of the offending attorney. Proof of alcoholism and consumption of intoxicants cannot be mitigating factors or a defense without proof of direct causation to the unethical conduct. Mere consumption of intoxicants by an alcoholic is insufficient proof that the alcoholism in fact caused the unethical conduct. There must

be proof of the causal connection in addition to the attorney's alcoholism. In this case, because the referee found no causal relation between the claimed alcoholism and the misconduct, I join the majority's order suspending Attorney Wood from the practice of law for sixty days.

If Attorney Wood as an alcoholic believes his reformation from that condition requires conditions for practice of the law to be set, he can bring a petition for voluntary medical disability while not facing any ethics violation claims.

WILLIAM A. BABLITCH, J. (dissenting). I am troubled by both the majority opinion and the concurring opinion and accordingly, I dissent.

The basic flaw with the majority opinion is that it fails to deal with the problem underlying this disciplinary proceeding, namely Attorney Wood's alcoholism. Attorney Wood, having been found to have discussed a divorce proceeding with an opposing party without the presence or consent of her attorney, in violation of SCR 20.38(1), and to have misrepresented facts to her concerning matters pertinent to the divorce proceeding, in violation of SCR 20.04(4), is suspended from the practice of law for a sixty-day period. After this period of suspension, he will be allowed to return to the active practice of law with no restraints, with no conditions, with no supervision. This unsupervised reinstatement will occur despite Attorney Wood's admission that he is an alcoholic, despite the uncontroverted evidence in the record that Attorney Wood is an alcoholic, and despite the fact that alcoholism by its basic nature is characterized by a significant rate of recidivism.

SCR 21.03(5) provides: "Discipline for misconduct is not intended as punishment for wrongdoing but is for the protection of the public. . . ." The discipline meted out by the majority fails to do this. By failing to impose conditions on Attorney Wood's future practice, at least

somewhat along the lines recommended by Dr. Mann, the majority opinion ignores the substantial chance for recurrence of the illness, and consequently, fails to provide adequate protection to the public.

The majority, in explaining the rationale behind its decision, repeatedly emphasizes that the referee made no finding that Attorney Wood's misconduct was caused by his alcoholism. While that is correct, it is equally true that the referee was completely silent as to causation. However, the record itself is not at all silent as to causation. It is uncontroverted in the record that: 1) Attorney Wood is an alcoholic; and 2) "[t]he behavior exhibited by Mr. Wood on th[e] occasion [of the misconduct] was, in my opinion, *clearly and directly related to his acute alcoholism.*" (Emphasis added.) Medical Report, Dr. Mann. Such was the unrebutted testimony of Dr. George A. Mann, M.D., Vice President, Chemical Dependency Services, St. Mary's Hospital/Rehabilitation Center, Minneapolis, Minnesota.[1]

Dr. Mann's Medical Report, again uncontroverted, also says: "Since alcoholism by its basic nature is characterized by a significant rate of recidivism, it would be critical for an individual with Mr. Wood's history to put into place a system of safeguards that would neutralize

---

[1] Dr. Mann's qualification testimony was as follows:

"[Since 1968] I have, during those years, been involved in all phases of treating alcoholics and also chemically dependent people. I have been the Medical Director of the treatment program during those years. I have done private medical practice in chemical dependency. I have served as the consultant to a wide variety of the hospitals. I was the Medical Director for some years of the Johnson Institute, which is an organization exclusively dedicated to the care, education of chemical dependent people and their families. I served on the board of that organization. I'm currently a consultant to Beth Israel Hospital in New York, Our Lady of Lourdes in Pasco, Washington, St. Joseph's in Tucson. I've served on a number of committees of the Minnesota State Medical Association."

or substantially reduce the statistical chances for a recurrence of the acute stages of his illness." The majority fails to establish safeguards that would help to ensure Attorney Wood's rehabilitation, and therefore does not adequately protect the public from the danger of additional alcohol related professional misconduct. That failure is most troubling to me.

The concurrence poses a problem of a different nature. The concurrence accepts the conclusion that Attorney Wood's license be suspended for a sixty-day period but urges that the suspension period be followed by a 3-year period of strict conditional practice. The conditions adopted by Justice Callow are those which were suggested by Dr. Mann. *See* concurrence at pp. 619, 620. Imposing a lengthy period of conditional practice provides adequately for the protection of the public as demanded by our own rules. SCR 21.03 (5). However, what it would also do is discourage lawyers who have engaged in unprofessional conduct caused by their alcoholism from coming forward, admitting to their alcoholism, and receiving treatment. Clearly, if that is the way this court deals with cases involving misconduct caused by alcoholism, we will encourage lawyers who are alcoholic and are subject to disciplinary proceedings to hide and deny their alcoholism. A lawyer's honesty in this regard could subject him or her to *both* the normal disciplinary suspension (here sixty days) *and* conditional practice thereafter.

The problem of dealing with misconduct caused by alcoholism is very complex. To its great credit, the State Bar of Wisconsin through its Board of Governors has recently doubled its budget for Lawyers Concerned for Lawyers, an organization formed to aid and assist alcoholic lawyers and their families. Progress is being made, the levels of consciousness are being raised.

Misconduct caused by alcoholism cases are going to continue to come before us. With close to 14,000 attor-

neys licensed to practice in this state, it is fair to assume that these cases will not go away.

With the growing awareness of this disease, its horrible consequences, and most positively its susceptibility to successful treatment, we should begin to seriously consider alternative and consistent methods of dealing with these cases. Our goal should be to treat cases involving misconduct caused by alcoholism in such a way as to accomplish a number of objectives. Some of those objectives should be: 1) to protect the public, the courts and the legal profession, consistent with SCR 21.03(5) ; 2) to encourage the rehabilitation of alcoholic attorneys so that they can return to a productive professional and personal life; and 3) to assure the public that we are not simply white-washing the conduct but are rather attempting to deal with a most difficult problem in an enlightened and comprehensive manner, intended to protect the interests of all concerned.

Consistent with these objectives, there is a different approach to discipline involving misconduct caused by alcohol that we should consider. When alcoholism is shown to be causative, we should impose the normal discipline, but with the discipline being stayed; the rigid conditions for continuing practice should be applied along the lines suggested in Justice Callow's concurring opinion which would include periodic reports of satisfactory progress from the medical authorities, oversight of the legal practice by other competent attorneys in the area, and, of course, full compliance with the code of professional responsibility. *See Petition of Johnson,* 322 N.W.2d 616 (Minn. 1982) ; *Tenner v. State Bar of California,* 28 Cal. 3d 202, 168 Cal. Rptr. 333, 617 P.2d 486 (1980) ; *Matter of Walker,* 254 N.W.2d 452 (S.D. 1977). The failure to comply with any of the conditions would result in the immediate imposition of the discipline originally imposed. *See* Morehouse, *In Re Driscoll: Illinois'*

*New Approach In The Discipline of Alcoholic Attorney Misconduct,* 31 De Paul L. Rev. 433 (1982).

I would apply this discipline in this case notwithstanding the absence of a finding by the referee that the misconduct was caused by Attorney Wood's alcoholism. Given that the referee made no finding whatsoever, and given that the uncontradicted, uncontroverted evidence in this record clearly demonstrates the causative nature of Attorney Wood's alcoholism to the misconduct, a finding by this court of alcoholism causation is warranted. *Cf. Connecticut General Life Ins. Co. v. DILHR,* 86 Wis. 393, 404–05, (1979). I would suspend Attorney Wood's license to practice law for sixty days, stay the suspension, and afford him the opportunity to continue to practice law under the type of conditions referred to above.

This approach to discipline may not be the best answer or the only answer. There may well be other conditions or alternative disciplines that would better provide the needed motivation to the alcoholic attorney. But at the very least this approach affords motivation to other alcoholic lawyers similarly involved to come forward and deal with the disease; it provides future protection to the public against further unprofessional conduct by Attorney Wood short of prohibiting his practice altogether; it may provide him with motivation to continue to treat his alcoholism; and it will provide assurance to the public that we are in fact dealing seriously and positively with this very complex problem.

I respectfully dissent.