IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Eva E. RITTER, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant,

v.

Eva E. RITTER, Respondent.

Supreme Court

*No. 2011AP1469–D.—Decided January 4, 2013.*

2013 WI 3

(Also reported in 824 N.W.2d 450.)

¶ 1. PER CURIAM.   We review Referee James G. Curtis's report recommending that Attorney Eva E. Ritter be publicly reprimanded for professional misconduct and recommending a reduction in costs. No appeal has been filed in this matter so our review proceeds pursuant to SCR 22.17(2).[1] After reviewing the matter,

[1] SCR 22.17(2) states:

we adopt the referee's findings of fact, conclusions of law, and recommended sanction. We conclude, however, that Attorney Ritter should be required to pay the full costs of this proceeding, which were $6,978.68 as of September 17, 2012.

¶ 2.    Attorney Ritter was admitted to practice law in Wisconsin on April 20, 1993. In 2007 Attorney Ritter received a public reprimand for failing to maintain records documenting the receipt and disbursement of fiduciary funds she handled for a client; making cash disbursements from a fiduciary savings account such that she was unable to document what she did with the funds; holding client or fiduciary funds outside of a trust account; and failing to promptly deliver funds to the client that he was entitled to receive. Public Reprimand of Eva E. Ritter, No. 2007–9.

¶ 3.    The facts giving rise to this complaint stem from Attorney Ritter's representation, obtained through a State Public Defender (SPD) Appointment, of A.A., a criminal defendant. Attorney Ritter hired Mary Jane Kernosky of Central Wisconsin Sentencing Advocates & Investigations, LLC (Kernosky) to conduct an independent presentence investigation (PSI) report for A.A. On May 8, 2009, Kernosky completed her PSI report and sent it to Attorney Ritter with a $1,500 invoice for Kernosky's services.

¶ 4.    In July or August of 2009, Attorney Ritter duly submitted an invoice for representing A.A. to the SPD. That invoice included her own attorney fees and

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

Kernosky's fee. On or around August 17, 2009, the SPD sent Attorney Ritter a check for $2,947.54, which included $1,500 for Kernosky.

¶ 5.   Although the SPD check was comprised partially of funds belonging to Kernosky, Attorney Ritter neither deposited the funds into her trust account nor notified Kernosky that she had received the funds. Instead, on or around August 21, 2009, Attorney Ritter endorsed the SPD check and deposited it into her personal business account, and she proceeded to use the funds for her own expenses.

¶ 6.   Between November of 2009 and January of 2010, Kernosky repeatedly contacted Attorney Ritter seeking payment. Attorney Ritter made promises to pay, but failed to do so. Kernosky eventually filed a small claims action against Attorney Ritter and, in June of 2010, obtained a default judgment against Attorney Ritter in the amount of $2,107.96. On August 30, 2010, Attorney Ritter paid the small claims judgment.

¶ 7.   On June 27, 2011, the Office of Lawyer Regulation (OLR) filed a complaint seeking a 60–day suspension of Attorney Ritter's license to practice law alleging that Attorney Ritter's conduct in connection with the Kernosky invoice violated three separate rules of professional conduct.

¶ 8.   The OLR alleged that (1) by receiving funds from the SPD that belonged to Kernosky and then depositing those funds into a non-trust account used for business expenses, Attorney Ritter failed to hold in trust, separate from her own property, that property of a third person that was in her possession in connection with a representation, in violation of SCR 20:1.15(b)(1)[2] (Count One); (2) by failing to notify Kernosky promptly

[2] SCR 20:1.15(b)(1) states:   Separate account.

in writing that Attorney Ritter had received funds belonging to Kernosky, and failing to deliver promptly to Kernosky those funds, Attorney Ritter violated SCR 20:1.15(d)(1)[3] (Count Two); and (3) by converting to her own use funds received from the SPD as payment for Kernosky's work, Attorney Ritter engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c)[4] (Count Three).

¶ 9.    Attorney Ritter filed an answer admitting some of the allegations and disputing others. She also asserted, "that [she] was extremely ill and not able to communicate or react in a meaningful fashion to the needs of the complainant. That she suffered lung and other problems a lack of oxygen [sic] which affected her mental process all of which has now been resolved."

¶ 10.    Scheduling of this case was delayed because of Attorney Ritter's poor health. The evidentiary hearing occurred on May 24, 2012.

---

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[3] SCR 20:1.15(d)(1) provides:    Notice and disbursement.

Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[4] SCR 20:8.4(c) says it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

¶ 11. The referee made extensive factual findings relating to Attorney Ritter's handling of the invoice. He found that Attorney Ritter's practice was limited to criminal defense, noting that she mainly worked for Native Americans and appointments obtained through the SPD. The referee considered this relevant because Attorney Ritter had little reason to utilize her trust account. She primarily relied on her clients making minimal monthly payments. The referee also noted that Attorney Ritter had never previously utilized an expert such as Kernosky on an SPD case.

¶ 12. The referee found that Attorney Ritter had four separate accounts with Wells Fargo bank: a personal account with an ATM access card, a business account, a trust account, and a savings account designed to provide overdraft protection. She typically used her personal account to pay routine expenses and obligations.

¶ 13. The referee found that since 1997 Attorney Ritter has been afflicted with chronic lymphocytic leukemia (CLL) and had undergone chemotherapy on multiple occasions. This disease and the course of medical treatment resulted in multiple and serious symptoms including shortness of breath, hypoxia, cough, general malaise, and recurrent bouts with pneumonia. Various medications were prescribed, as well.

¶ 14. More specifically, the referee found that in December 2008, Attorney Ritter was hospitalized for five days at Mayo Clinic's St. Mary's Hospital in Rochester, Minnesota, for pneumonia with complicated left pleural effusion. Following discharge, she was directed to follow up in the pulmonary clinic.

¶ 15. In January of 2009 Attorney Ritter was struck by a car as a pedestrian and suffered injuries. She was again hospitalized at St. Mary's Hospital for

five days with multiple diagnoses including right lower lobe pneumonia. She had worsening shortness of breath and malaise and was placed on oxygen therapy at home.

¶ 16. Attorney Ritter testified, and the referee found, that from late 2008 through 2010, including the period of time the Kernosky invoice was an issue, Attorney Ritter was severely limited by her medical conditions and she has little recollection of what occurred during that time. Attorney Ritter developed pneumonia six times during that period and lost significant weight.

¶ 17. Attorney Ritter, contrary to medical recommendations, attempted to perform some legal work during this period. The referee found that when she received the check from the SPD in August 2009 she was experiencing medical issues that affected her functioning. It is undisputed that on or about August 17, 2009, the SPD issued a check payable to Attorney Ritter, which Attorney Ritter promptly endorsed and deposited into her personal account. Attorney Ritter did not deposit the SPD payment in her trust account and, despite knowing that the SPD payment included the $1,500 payment for Kernosky, failed to pay Kernosky. Attorney Ritter used the funds to pay for things like house payments, rent, and utilities.

¶ 18. Attorney Ritter testified that her illness contributed to the time it took for her to eventually pay Kernosky. The referee explicitly found that Attorney Ritter's medical condition and illness were causes of her failure to promptly pay Kernosky.

¶ 19. Meanwhile, the record reflects, and the referee found, that Kernosky was persistent in her efforts to be paid. She made frequent requests for payment, reported the matter to the OLR, pursued a grievance, pursued an open records request with the SPD, and

filed a small claims action against Attorney Ritter in Marathon County. Attorney Ritter was hospitalized when Kernosky filed suit and, although Attorney Ritter was not properly served due to her hospitalization, the small claims court entered a default judgment against her on June 2, 2010, in the sum of $2,107.96.

¶ 20. Attorney Ritter was hospitalized again from June 14, 2010, to June 25, 2010. Around this time, Attorney Ritter recalled that she had inherited some stock that was kept in a safe-deposit box. In July 2010 Attorney Ritter arranged for the sale of the stock and, with part of the proceeds, Attorney Ritter reimbursed Kernosky in full.

¶ 21. The referee concluded the OLR had proved by clear and convincing evidence that by receiving funds from the SPD that belonged to Kernosky and then depositing those funds into a non-trust account used for business expenses, Attorney Ritter failed to hold in trust, separate from her own property, that property of a third person that was in her possession in connection with a representation, in violation of SCR 20:1.15(b)(1) (Count One). The referee also concluded that by failing to notify Kernosky promptly in writing that Attorney Ritter had received funds belonging to Kernosky, and failing to deliver promptly to Kernosky those funds, Attorney Ritter violated SCR 20:1.15(d)(1) (Count Two).

¶ 22. However, the referee concluded that the OLR had failed to demonstrate by clear, satisfactory, and convincing evidence that Attorney Ritter engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of SCR 20:8.4(c) (Count Three).

¶ 23. In reaching this conclusion the referee noted that a medical condition may be considered in

mitigation of discipline if the condition is explicitly found to have caused the misconduct. *In re Disciplinary Proceedings Against Schwartz,* 134 Wis. 2d 18, 22, 397 N.W.2d 98 (1986). In the present case, the referee explicitly determined that Attorney Ritter's medical condition was a cause of her misconduct. The referee acknowledged that Attorney Ritter's prior public reprimand was an aggravating factor, but recognized additional mitigating factors, observing that "[w]hile payment to Ms. Kernosky was delayed, she ultimately received full payment of her billed charge and the substantial costs taxed as a part of the small claims action. There was no attempt at personal gain on [Attorney] Ritter's part and no intent to cheat or defraud another."

¶ 24. Ultimately, the referee, emphasizing that he heard Attorney Ritter testify, carefully considered and discussed the case law presented by the OLR and deemed distinguishable the cases the OLR cited in support of its requested 60–day suspension. Noting that Attorney Ritter's medical situation has stabilized and her medical prognosis is positive, the referee stated that "suspension of her license would be personally devastating to [Attorney] Ritter and is not necessary to protect against repetition of the misconduct, . . . ." The referee strongly recommended a public reprimand as sufficient discipline for Attorney Ritter's misconduct and recommended that she be required to pay the costs of this proceeding.

¶ 25. Both the OLR and Attorney Ritter sought reconsideration of certain aspects of the referee's report and recommendation. The OLR asked the referee to revisit the conclusion that Attorney Ritter did not violate SCR 20:8.4(c), citing a myriad of cases for the proposition that a finding of wrongful intent is not

needed to prove a violation of SCR 20:8.4(c), and that a violation of SCR 20:8.4(c) can be based on an attorney's "carelessness and neglect." *See, e.g., In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, 248 Wis. 2d 662, 636 N.W.2d 718; *In re Disciplinary Proceedings Against Usow,* 214 Wis. 2d 596, 571 N.W.2d 162 (1997). Attorney Ritter requested a reduction in costs, citing her financial circumstances and the fact that she was exonerated on the most serious charged filed against her.

¶ 26.  The referee thoroughly considered both motions, maintaining that under the facts of this case, the OLR had not proven a violation of SCR 20:8.4(c). The referee acknowledged that in the proper case, reckless conduct in derogation of what the attorney knew or should have known under the circumstances can qualify as conduct involving dishonesty, fraud, or deceit. Here, however, the referee was persuaded, in part by Attorney Ritter's own testimony and by the medical evidence adduced on her behalf, that Attorney Ritter's conduct did not rise to the level of dishonesty, fraud, or deceit that constituted a violation of SCR 20:8.4(c). The referee added that even if the OLR had proved a violation of SCR 20:8.4(c), it would not alter his recommendation for discipline because "this case essentially concerns one focused incident of how the SPD check was handled. . . . There are no multiple acts of misconduct in this case and no pattern of misconduct has been shown."

¶ 27.  Regarding Attorney Ritter's request that the referee reconsider his recommendation that Attorney Ritter pay the full costs of the proceeding, the referee said it is "apparent that any cost award will be a financial burden on [Attorney Ritter]," and since the OLR's motion to reconsider only added to the costs

involved, the referee recommended the court exercise its discretion and consider a reduction in the costs assessed against Attorney Ritter.

¶ 28.   When reviewing a referee's report and recommendation in an attorney disciplinary proceeding, we affirm a referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. *In re Disciplinary Proceedings Against Inglimo,* 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 29.   Here, we adopt the referee's findings of fact. We also agree with the referee that those findings of fact support a legal conclusion that Attorney Ritter committed the first two counts of professional misconduct alleged by the OLR. We accept the referee's conclusion—derived in part from his assessment of Attorney Ritter's credibility, evidence of her serious medical issues, and the referee's explicit finding that her medical condition caused the misconduct—that the OLR has failed to establish a violation of SCR 20:8.4(c) in this case. *See In re Disciplinary Proceedings Against Wood,* 122 Wis. 2d 610, 363 N.W.2d 220 (1985). We agree with the referee that under the facts presented, a public reprimand is sufficient discipline in this case.

¶ 30.   Finally, we turn to the issue of the costs of this proceeding. Attorney Ritter questioned imposition

119

of full costs in a motion for reconsideration before the referee, but she has not formally objected to the imposition of costs as set forth in SCR 22.24(2). Our general policy is to impose the costs of a disciplinary proceeding against the respondent attorney whose misconduct necessitated the proceeding. SCR 22.24(1m). We see no reason to deviate from that policy in this case. There is nothing on the face of the OLR's statement of costs that would suggest the requested costs are unreasonable. We are aware that Attorney Ritter has significant financial obligations, and we suggest Attorney Ritter work with the OLR to reach an agreement by which the cost assessment may be paid over time. *See In re Disciplinary Proceedings Against Konnor,* 2005 WI 37, ¶ 50, 279 Wis. 2d 284, 694 N.W.2d 376 (Abrahamson, C.J., concurring) ("If a lawyer cannot pay the full costs immediately, an agreement may be reached to enable the lawyer to pay the costs over time").

¶ 31. IT IS ORDERED that Eva E. Ritter is publicly reprimanded for her professional misconduct.

¶ 32. IT IS FURTHER ORDERED that within 60 days of the date of this order, Eva E. Ritter shall pay to the Office of Lawyer Regulation the costs of this proceeding or advise the court of an agreement reached with the Office of Lawyer Regulation by which the cost assessment may be paid over time.

¶ 33. IT IS FURTHER ORDERED that the director of the Office of Lawyer Regulation shall advise the court if there has not been full compliance with all conditions of this order.

¶ 34. MICHAEL J. GABLEMAN, J., did not participate.

¶ 35. ANN WALSH BRADLEY, J. (*dissenting in part*). Consistent with the recommendation of the ref-

eree, I would not impose the full costs of this proceeding on Attorney Ritter.

¶ 36.    I am authorized to state that Justice DAVID T. PROSSER joins this opinion dissenting in part.