In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Jeffrey R. KOHLER, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Jeffrey R. KOHLER, Respondent.

Supreme Court

*No. 2007AP2086–D. Decided March 24, 2009.*

2009 WI 24

(Also reported in 762 N.W.2d 377.)

¶ 1. PER CURIAM. In this disciplinary proceeding, we review the report and recommendation of Referee Timothy L. Vocke that Attorney Jeffrey R. Kohler be publicly reprimanded for his professional misconduct in failing to comply with an opposing party's discovery request and with court orders to provide discovery, and in making misrepresentations to the court that he had complied.

¶ 2. In view of the fact that neither Attorney Kohler nor the Office of Lawyer Regulation (OLR) has appealed from the referee's report and recommendation, our review will proceed under SCR 22.17(2).[1] In conducting our review, we must affirm the referee's findings of fact unless they are found to be clearly erroneous. *See In re Disciplinary Proceedings Against Inglimo,* 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. We review the referee's conclusions of law on a de novo basis. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. Finally, we determine the appropriate level

---

[1] SCR 22.17(2) provides: Review; appeal.

(2) If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

of discipline given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 3.    Attorney Kohler has been licensed to practice law in Wisconsin since 1984. The conduct that forms the basis for this disciplinary proceeding occurred during the course of Attorney Kohler's work as a part-time assistant district attorney for Washburn County.

¶ 4.    On July 2, 2003, W.C. lodged a complaint against D.G. with the Washburn County district attorney's office regarding a construction project for which W.C. had hired D.G. Based on W.C.'s allegations, Attorney Kohler issued a criminal complaint against D.G. alleging that he had committed felony theft by contractor due to his failure to pay a materials supplier with funds given to him by W.C. D.G. retained Attorney Erwin Steiner to represent him in the criminal case.

¶ 5.    In addition to the criminal case against D.G., the materials supplier also initiated a civil action for damages against both D.G. and W.C. D.G. then filed a cross-claim against W.C. in that action. Thus, the issue of who was responsible for paying the materials supplier was also being litigated in the civil action while the criminal case was proceeding.

¶ 6.    Washburn County Circuit Court Judge Eugene Harrington conducted a preliminary examination in the criminal case on August 22, 2003. At the hearing, the state marked as exhibits the proposal D.G. had made to W.C. for the construction project and a check ledger for a U.S. Bank account from which W.C. had made payments to D.G. The account was important because it was the account into which U.S. Bank had placed the proceeds of a construction loan for the

building project. After hearing the evidence presented, Judge Harrington concluded that there was probable cause to believe that a felony had been committed, and bound D.G. over for trial.

¶ 7.   On November 20, 2003, Attorney Steiner filed a Demand for Discovery and Inspection with the clerk of circuit court and served a copy on Attorney Kohler on behalf of the state. Of importance to this proceeding is Request 14 of that discovery demand, which requested the state to:

> Furnish the defense with copies, both front and back, of all checks, issued by [N.C.] or [W.C.] from US Bank, account number [] and copies of all bank statements for said account from October 1, 2002 through October 31, 2003, inclusive, and copies of all documents within the possession or control of [N.C.] or [W.C.] which relate to the construction of the building which is the subject of this action . . . .

The referee found that the defense had sought these records to determine whether W.C. had been acting as his own general contractor by paying many of the bills for the construction project directly.

¶ 8.   At a status conference on December 11, 2003, Judge Harrington addressed the status of the defense's discovery requests. He acknowledged that the state may have responded to them informally, but he directed the state to file and serve a formal response to the requests. Attorney Kohler promised that the state would serve a formal response by the end of the year, which the court accepted as an appropriate time. The court then set the matter for a jury trial on March 11, 2004.

¶ 9.   On December 23, 2003, Attorney Kohler filed a response to the discovery requests. The response to Request 14 stated that the response was "pending."

¶ 10.   The court held a pretrial conference on February 17, 2004. At that time, Attorney Kohler still had not provided the documents sought in Request 14. The court acknowledged that the state had still not complied with the request, but noted that the state had promised to provide the requested documents by noon on February 27, 2004.

¶ 11.   On February 26, 2004, Attorney Kohler filed a trial exhibit list, with copies of the exhibits attached. Among the exhibits were copies of five checks that W.C. had written to D.G. Three of the five checks had been drawn on the U.S. Bank account. The other two checks had been drawn on other accounts.

¶ 12.   Attorney Kohler did not provide copies of the other checks that had been written against the U.S. Bank account nor the bank statements for that account that had been requested in Request 14.

¶ 13.   On March 4, 2004, one week before the scheduled trial date, D.G. filed a motion to dismiss the criminal charge against him with prejudice due to the state's failure to respond to his discovery requests. In the supporting brief, Attorney Steiner pointed out that the state had not disputed its ability to obtain the requested bank records from W.C.

¶ 14.   A hearing was held on the motion on March 10, 2004. At that hearing, Attorney Kohler argued for the first time that the documents requested in Request 14 were not relevant. Judge Harrington correctly noted that relevance was to be determined by the court. He expressed concern that the state had not produced the requested records, but did not grant D.G.'s motion to dismiss. Stating that the failure to comply with the discovery request had been unintentional, the court continued the trial date until August 17, 2004.

¶ 15.    During the March 10, 2004, hearing, the attorneys and the court had a lengthy discussion about which documents Attorney Kohler was to produce. W.C. was present at the hearing and was questioned about his willingness to provide the requested documents. He agreed to provide to Attorney Kohler copies of documents from any bank account that related to the construction of the building on which D.G. had worked. Judge Harrington specifically told W.C. that he needed to produce a copy of a check register for the U.S. Bank account. Judge Harrington expressly ordered that the requested documents be produced by the state to Attorney Steiner by April 30, 2004. He directed Attorney Steiner to raise any problems with the state's production in a motion to be filed by June 1, 2004.

¶ 16.    Attorney Kohler did not produce any further documents or information by April 30, 2004, or even throughout the month of May. On June 1, 2004, Attorney Steiner filed a renewed motion to dismiss the criminal charges with prejudice due to the state's continuing failure to comply with its discovery obligations.

¶ 17.    On June 14, 2004, Attorney Kohler sent a letter to Judge Harrington with a copy to Attorney Steiner. Attached to the letter were three invoices and three checks that referenced payments by W.C. directly to subcontractors. Only one of the three checks had been drawn on the U.S. Bank account. Attorney Kohler did not produce any bank statements, check register, or copies of other checks relating to the U.S. Bank account. The text of his letter stated, in part, "Here are the items the court ordered [W.C.] to produce with regard to this case. I believe the court wanted the originals filed."

¶ 18.    The circuit court held a hearing on D.G.'s renewed motion to dismiss the criminal action on July 22, 2004. At that hearing, Attorney Kohler represented

to Judge Harrington that he had fully complied with the defense's discovery requests. Attorney Kohler also made a demand for a speedy trial on behalf of the state. The court found that the state had not complied with all the discovery requests and asked Attorney Kohler why the court should not grant the dismissal requested by D.G. Attorney Kohler responded that he did not believe the court had the authority to dismiss the criminal case as a sanction for the state's discovery violations. Attorney Kohler also stated, "All I can say is we have submitted what Mr. Steiner wanted. Those are the items."

¶ 19. Judge Harrington took the motion to dismiss under advisement, indicating that he wanted to determine whether the state had complied with the discovery rules and the court's prior order, to look at the remedies available to the court, and to "make doubly sure before I take precipitous action in a felony file." The court was forced to remove the August 17, 2004, trial from the court's calendar.

¶ 20. On August 18, 2004, the circuit court issued an oral decision on the June 1, 2004, motion to dismiss. The court explicitly found that Attorney Kohler's June 14, 2004, letter had "failed to provide the appropriate bank account records." It had also "failed to provide copies of all records relating to payment concerning the construction process." The court specifically stated that the documents sought by the defense were relevant and could produce exculpatory evidence. The court, however, denied the motion to dismiss, and set the matter for a further status conference.

¶ 21. Despite the court's clear ruling that the requested documents were relevant, Attorney Kohler continued to fail to produce any further documents or information. On November 12, 2004, D.G. filed another motion to dismiss alleging a denial of his right to a

speedy trial and prosecutorial misconduct. In the supporting brief, Attorney Steiner argued that the state's failure to comply with its discovery obligations had caused the delay, and that the delay had jeopardized D.G.'s ability to defend against the criminal charges because the trial in the civil action was scheduled for the end of November.

¶ 22. The civil trial did proceed on November 30, 2004, with Judge Harrington presiding. After the civil trial was concluded, Judge Harrington held a status conference in the criminal case. He first denied the defense's renewed motion to dismiss. He then stated that because he had presided over the civil trial, he would withdraw from the criminal case.

¶ 23. On December 15, 2004, Judge Frederick Henderson was assigned to preside over the criminal action. The criminal trial was now scheduled for March 10, 2005.

¶ 24. On March 4, 2005, D.G. filed another motion to dismiss. Judge Henderson conducted a telephone hearing regarding the motion. Judge Henderson stated that he understood that Judge Harrington had made several orders requiring W.C. and the state to provide certain documents, but that Attorney Steiner contended that no further documents had been produced. When asked if that was correct, Attorney Kohler denied it. Attorney Kohler stated that W.C. had "supplied the checks in question that were to the subcontractors." Attorney Steiner, however, explained to Judge Henderson that the construction loan proceeds had been placed into the U.S. Bank account, and that the part of the check register marked at the preliminary hearing showed at least 36 checks drawn on that account (although Attorney Steiner had so far received a total of only five checks). Nonetheless, later in the hearing

Attorney Kohler specifically stated that "Mr. Steiner's got all the discovery he's going to get."

¶ 25. Judge Henderson went through the court's prior orders, noting that in an August 18, 2004, order Judge Harrington had stated that D.G. was entitled to receive the requested information, and that Judge Harrington had denied the state's speedy trial request because to require D.G. to proceed to trial without the requested discovery information would have been a denial of fundamental fairness. Attorney Kohler acknowledged that he had not provided any further documents after the August 18, 2004, order. When asked how he therefore could have complied with the court's August 18, 2004, order, Attorney Kohler responded, "All I can say is we gave him all the subcontractor checks and whenever that was, it was earlier in the year, and that's all I know about."

¶ 26. Judge Henderson concluded that the state had not met its discovery obligations and had not complied with the court's orders:

> So how can I conclude any different than the State has failed once again for perhaps the fourth time that they didn't do what [Judge] Harrington ordered. What [Judge] Harrington ordered was to give these bank records to Steiner, put them in the court file so there could be a determination as to whether they're exculpatory.

¶ 27. Ultimately, the circuit court dismissed the information against D.G. with prejudice due to Attorney Kohler's disobedience of Judge Harrington's orders.[2]

---

[2] Attorney Kohler's answer disputed the OLR's allegation that the dismissal had been due to his conduct, but the referee found that the OLR's allegation was correct.

¶ 28. On the basis of these facts, for which there was no genuine dispute, the referee concluded that summary judgment should be entered and that the OLR had proven by clear, satisfactory, and convincing evidence that Attorney Kohler had committed three violations of the Rules of Professional Conduct for Attorneys. First, by failing or refusing to comply with the circuit court's orders to provide the discovery items requested in Request 14, Attorney Kohler had knowingly disobeyed an obligation under the rules of a tribunal, which was not an open refusal based on an assertion that no valid obligation exists, in violation of SCR 20:3.4(c).[3] Second, the referee concluded that Attorney Kohler had violated SCR 20:3.4(d)[4] by failing to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party. Third, the referee concluded that by representing to Judge Henderson during the March 8, 2005, telephone hearing that he had fully complied with Judge

[3] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. *See* S. Ct. Order 04–07, 2007 WI 4, 293 Wis. 2d xv, 726 N.W.2d Ct.R-45 (eff. July 1, 2007); and S. Ct. Order 06–04, 2007 WI 48, 297 Wis. 2d xv, 730 N.W.2d Ct.R.-29 (eff. July 1, 2007). Because the conduct underlying this case arose prior to July 1, 2007, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2007.

SCR 20:3.4(c) states that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

[4] SCR 20:3.4(d) provides a lawyer shall not, "in pretrial procedure, . . . fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party."

27

Harrington's prior discovery orders, Attorney Kohler had knowingly made a false statement of fact or law to a tribunal, in violation of former SCR 20:3.3(a)(1).[5]

¶ 29.   Following the referee's pronouncement of his findings of fact and conclusions of law, Attorney Kohler and the OLR jointly requested that the referee recommend a public reprimand, which was the level of discipline originally requested by the OLR. The referee agreed that a public reprimand would be an appropriate level of discipline in this case. He acknowledged that Attorney Kohler had never before been the subject of professional discipline and that Attorney Kohler's honest admissions to nearly all of the OLR's allegations had reduced the time and expense needed for the proceeding.

¶ 30.   During the teleconference at which he announced his findings of fact and conclusions of law, however, the referee made some rather strong comments about Attorney Kohler's professional misconduct. The referee saw absolutely no reason for Attorney Kohler's failure to provide the requested discovery. He noted that a prosecutor, as a minister of justice, has a duty not just to seek a conviction of the guilty, but to be fair to each defendant and to obey an order issued by a court. The referee described Attorney Kohler's disobedience of the circuit court's orders as "extremely egregious conduct," and indicated that there was evidence of a "deliberate decision to disobey."

¶ 31.   After our independent review of the matter, we conclude that the referee's findings of fact are not clearly erroneous, and we adopt them. We also agree with the referee that the facts as found convincingly

---

[5] Former SCR 20:3.3(a)(1) states "[a] lawyer shall not knowingly make a false statement of fact or law to a tribunal."

demonstrate that Attorney Kohler violated the Rules of Professional Conduct for Attorneys, as alleged in the three counts in the OLR's complaint.

¶ 32. Because of concerns about the appropriate level of discipline, this court directed the parties to file memoranda explaining the factual and legal bases for the stipulated request for a public reprimand. Both parties filed memoranda that continued to assert that a public reprimand was appropriate in this case. The OLR's memorandum set forth the legal authorities and the factors present in this case that the OLR director had considered in deciding to request a public reprimand. We have considered those responses, as well as our own prior disciplinary decisions.

¶ 33. There is support in our prior decisions for either a public reprimand or a 60–day suspension in the present case. The two most analogous prior cases involving prosecutors appear to be *In re Disciplinary Proceedings Against Sanders,* 173 Wis. 2d 609, 494 N.W.2d 430 (1993), and *In re Disciplinary Proceedings Against Zapf,* 126 Wis. 2d 123, 375 N.W.2d 654 (1985). In *Zapf,* despite a discovery demand by the defense, a district attorney in a murder case failed to disclose the statement of a witness who heard the defendant make an incriminating statement. Attorney Zapf then elicited the defendant's incriminating statement from the witness at trial. The referee found that Attorney Zapf had intentionally failed to disclose the witness' statement and had planned to use the statement at trial. Moreover, this failure to comply with discovery obligations was not a first occurrence for Attorney Zapf. Although he had not been disciplined for two prior discovery lapses, he had been admonished by the court for those lapses in the court's decision on the merits of the case.

In a second part of the disciplinary case, Attorney Zapf had improperly sent to a criminal defendant copies of correspondence in which he disparaged defense counsel's handling of the case, in violation of a rule against communicating with a party the lawyer knows to be represented by counsel. For the failure to provide the witness statement and the improper communication with a represented party, we imposed a public reprimand.

¶ 34. In *Sanders,* an assistant district attorney made multiple misrepresentations to a judge, a court scheduling clerk, and opposing counsel in two separate cases. In the first case, Attorney Sanders falsely represented to the scheduling clerk that a case had been settled so that the clerk would remove it from a trial schedule. When the trial judge in that case learned of the deception, he dismissed the charges against the defendant. In a second and unrelated case, Attorney Sanders made misrepresentations to defense counsel and to a circuit court regarding the local jail's policy on work release and regarding statements by jail personnel concerning the suitability of a particular defendant for work release. The misrepresentations in the second case were made approximately nine months after the false statement to the scheduling clerk in the first case. Attorney Sanders had not previously been the subject of professional discipline. Ultimately, this court suspended the license of Attorney Sanders to practice law in this state for a period of 60 days.

¶ 35. Although there are certainly similarities between the *Sanders* case and the present case, including the making of a false statement to a trial judge and the dismissal of a criminal case because of a prosecutor's misconduct, we ultimately believe that Attorney Kohler's misconduct warrants the imposition of a public

30

reprimand. It appears that, as in *Zapf,* the core of Attorney Kohler's misconduct arose from his failure to comply with discovery obligations. Unlike the situation in *Sanders,* Attorney Kohler's misrepresentation was an attempt to justify his production of only some of the discovery items requested by the defense. Further, Attorney Sanders lied to court personnel in two different cases, separated in time. This indicates a pattern of similar misconduct. With Attorney Kohler, although it occurred on more than one occasion, all of Attorney Kohler's misconduct occurred in one case with respect to one issue.

¶ 36. In addition, we believe that a public reprimand will be sufficient to deter Attorney Kohler and other attorneys from similar misconduct. In his response regarding the appropriate level of discipline, Attorney Kohler noted that he has never been the subject of professional discipline in the more than two decades he has been practicing law. Moreover, he has practiced during that entire time in the same community. His practice therefore depends on the reputation he has developed over that lengthy period of time. A public reprimand will therefore have a significant effect on his reputation and practice and should serve to prevent him from engaging in similar conduct in the future.

¶ 37. Although we determine that a suspension is not necessary to protect the public and the judicial system in this instance, that result should not be interpreted as indicating that this court is not troubled by Attorney Kohler's misconduct. His continuing refusal to obey the circuit court's discovery orders, even if he disagreed with them, constitutes a serious violation of an attorney's professional obligations. No attorney, whether prosecutor, criminal defense counsel, or civil

31

attorney, has the option to disregard an order of a court, no matter how much the attorney disagrees with the order and no matter whether the order addresses discovery obligations or other matters. Our system of justice simply would not function if attorneys could overrule courts.

¶ 38.   Similarly, no attorney, whether prosecutor, criminal defense counsel, or civil attorney, may distort the truth when presenting argument to a court. As we noted in another case in which an attorney had made misrepresentations to this court, "an attorney's duty of candor toward the tribunal is central to the truth-seeking function of any court." *In re Disciplinary Proceedings Against Kalal,* 2002 WI 45, ¶ 1, 252 Wis. 2d 261, 643 N.W.2d 466. All courts have a right to expect that the attorneys appearing before them, regardless of the zeal they have for their client's cause, will adhere to the fundamental duty imposed on them as officers of the court to speak honestly. Attorney Kohler's misrepresentation about his compliance with the circuit court's prior discovery orders is a serious breach of his obligations as an officer of the court.

¶ 39.   In summary, we determine that Attorney Kohler should be publicly reprimanded for his professional misconduct in this proceeding. We also conclude that he should be required to pay the full costs of this disciplinary proceeding, which were $6,287.43 as of March 7, 2008.

¶ 40.   IT IS ORDERED that Jeffrey R. Kohler is publicly reprimanded for his professional misconduct.

¶ 41.   IT IS FURTHER ORDERED that within 60 days of the date of this order, Jeffrey R. Kohler pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his

inability to pay the costs within that time, the license of Jeffrey R. Kohler to practice law in Wisconsin shall be suspended until further order of the court.

¶ 42.   MICHAEL J. GABLEMAN, J., did not participate.