In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
James W. FRISCH, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

James W. FRISCH, Respondent.

Supreme Court

*No. 2007AP2638–D.—Decided July 2, 2010.*

2010 WI 60

(Also reported in 784 N.W.2d 670.)

¶ 1. PER CURIAM. We review the report and recommendation of the referee, Attorney Christine Harris Taylor, that Attorney James W. Frisch be publicly reprimanded for his professional misconduct and that no costs be assessed against him. Neither Attorney Frisch nor the Office of Lawyer Regulation (OLR) appealed from the referee's report and recommendation so our review has proceeded pursuant to SCR 22.17(2).[1] Having fully reviewed the matter, we agree that a public reprimand is an appropriate level of discipline for Attorney Frisch's misconduct. We also determine that this case presents "extraordinary circumstances" under SCR 22.24(1m), and therefore conclude that Attorney Frisch should not be required to pay the full costs of this disciplinary proceeding.

¶ 2. Attorney Frisch was admitted to the practice of law in Wisconsin in 1977. For many years Attorney Frisch has worked as a prosecutor in both Sheboygan

---

[1] SCR 22.17(2) states:

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

County and Milwaukee County. He is currently an assistant district attorney in the Milwaukee County District Attorney's Office (MCDAO). In his more than 30 years of practice, he has never before been subject to professional discipline.

¶ 3. The referee concluded that the professional misconduct in this case was a result of Attorney Frisch's struggles with alcoholism. According to the referee's report, there were concerns in Attorney Frisch's family about his alcohol consumption for a substantial number of years. He sought help for stress and alcohol consumption, but despite these efforts, his drinking increased in the early 2000s. Ultimately, his drinking progressed to the point that he was typically consuming significant amounts of alcohol after he arrived home from work.

¶ 4. The MCDAO's policy was that official case files were to remain in the office unless they were needed for use in court, and they were to be returned immediately upon completion of the court proceeding. Like other members of the MCDAO, however, Attorney Frisch regularly took home case files on which he worked in the evenings. He generally did this to transfer notes he had taken on other pieces of paper into the MCDAO case file or to review a file in preparation for upcoming court proceedings. The referee concluded that this practice of working at home in the evenings had been essential to Attorney Frisch's ability to perform his job as a prosecuting attorney.

¶ 5. As Attorney Frisch's evening alcohol consumption increased, his ability to work at home decreased, causing him to fall farther and farther behind on his file management, especially in the latter half of 2004. Thus, Attorney Frisch would take home every evening a sizable number of files with the intent to work on them after dinner but would not be able to get the work done. In the

131

morning he would take those files from his house back to his car, including those files on which he had been unable to work. When he arrived at work, he usually took into the office only those files that he needed for that day's court proceedings, a few additional files that required work, and those files that he had completed the night before. In addition, Attorney Frisch also kept some files in the trunk of his car that he considered to be low priority files. Some of these files remained in his car for an extended period of time.

¶ 6. On January 3, 2005, Chief Deputy District Attorney Robert Donohoo spoke with Attorney Frisch about an inquiry he had received from the Brown Deer police department concerning a criminal complaint that had been executed by a police officer but had apparently not been filed ("the Brown Deer case"). Attorney Frisch told Attorney Donohoo that he thought he had submitted the complaint and case file to the appropriate MCDAO staff members for the preparation and issuance of a summons to the defendant. Attorney Frisch testified, without contradiction at the disciplinary hearing, that Attorney Donohoo questioned him about what had happened with the Brown Deer case file, but did not ask him where the file was or direct him to locate it.

¶ 7. A few days later, Attorney Frisch also received a memorandum indicating that he was required to appear at an MCDAO investigative interview regarding "possible violation[s] of office work rules" concerning three cases in which the circuit court had either dismissed the complaint or made critical comments because of Attorney Frisch's failure to provide discovery to the defendant.

¶ 8. Attorney Frisch testified that on one of the following two weekends he went through all of the MCDAO case files in his car in order to inventory them

and ascertain what work needed to be done on them. During this process he discovered in the trunk of his car the Brown Deer case file. Attorney Frisch did not report to Attorney Donohoo that he had located the Brown Deer case file. His intent was to review the file and report back to Attorney Donohoo before returning the file to the office. The referee specifically found that "[a]t no time, either before or after [Attorney] Frisch found the Brown Deer case file in his trunk, did he intend to conceal the file from [Attorney] Donohoo or conceal from [Attorney] Donohoo the fact that the file had been in his car."

¶ 9. On January 14, 2005, Attorney Frisch met with Deputy District Attorney Jon Reddin for the investigative interview regarding the three cases with the discovery issues. At the meeting, Attorney Frisch stated that he had been dealing with the stress of some family issues and admitted that he had been seeking counseling for alcohol and other issues for approximately a year. Attorney Reddin adjourned the interview to allow Attorney Frisch to review the three case files and to obtain union representation.

¶ 10. On January 21, 2005, an MCDAO employee discovered Attorney Frisch drinking in his car in the parking garage. MCDAO personnel subsequently removed from Attorney Frisch's car over 20 closed and open case files. Among the files removed from the car was the Brown Deer case file.

¶ 11. Over the next couple of months Attorney Frisch sought both inpatient and intensive outpatient treatment for alcohol dependence and withdrawal. He then continued to receive periodic outpatient treatment.

¶ 12. Attorney Frisch returned to work in March 2005. He was assigned to in-custody intake court. The investigative interview that Attorney Reddin had adjourned was not rescheduled at that time.

¶ 13. In November 2005 Attorney Frisch had a relapse and readmitted himself for inpatient alcohol dependence treatment for several weeks. After his discharge from the inpatient treatment program, he continued with outpatient treatment and counseling.

¶ 14. An investigative interview was ultimately conducted in January 2006. Following that interview, an MCDAO attorney prepared a report recommending that Milwaukee County District Attorney E. Michael McCann find that Attorney Frisch had intentionally concealed his professional incompetence from his supervisors and had intentionally concealed the Brown Deer case file from Attorney Donohoo. District Attorney McCann rejected this recommendation. In an August 2, 2006, disciplinary letter to Attorney Frisch, District Attorney McCann found only that Attorney Frisch had "failed to provide [the Brown Deer case file] to Chief Deputy Robert Donohoo." District Attorney McCann suspended Attorney Frisch without pay for 22 working days and required that he enter into a "Last Chance Agreement."

¶ 15. John Chisholm succeeded E. Michael Mc-Cann as Milwaukee County District Attorney on January 1, 2007. District Attorney Chisholm testified in the disciplinary proceeding that because of Attorney Frisch's satisfactory work performance, he had not chosen to require Attorney Frisch to undergo alcohol testing, although he had the option to do so under the Last Chance Agreement. He further determined that, in the absence of any additional violation by Attorney Frisch, he would lift the Last Chance Agreement at the end of the three-year period on August 2, 2009. District Attorney Chisholm indicated that since he took office Attorney Frisch has not demonstrated any of the behavior or performance problems that he exhibited in 2004. Indeed, District Attorney Chisholm has been comfortable

enough with Attorney Frisch's behavior that he has reassigned Attorney Frisch to a general crimes team that handles misdemeanors and general felonies. District Attorney Chisholm testified that prosecutors on the general crimes team are required to assess each defendant for possible eligibility for a diversion program, and that he trusts Attorney Frisch to make those assessments and even to assist younger prosecutors in making those assessments.

¶ 16. In her report the referee made a specific finding that Attorney Frisch's failures to complete work both during the work day and at home in the evening in 2004 and early 2005 were due to his physiological alcohol dependence. She also found that there was no question in the record that Attorney Frisch has maintained complete sobriety since November 2005 and has regularly attended alcohol dependence meetings. She further found that Attorney Frisch had paid expenses or incurred personal debt in the total amount of approximately $20,000 for the uninsured portion of his inpatient alcohol treatment.

¶ 17. Attorney Frisch did not contest the allegations in Count 1 of the OLR's complaint that he violated SCRs 20:1.3[2] and 20:3.2[3] by failing to act with diligence and promptness in handling the prosecutions assigned to him and by failing to take all actions reasonably necessary to expedite the litigation of those matters.

[2] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[3] SCR 20:3.2 states that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

135

The referee concluded that Attorney Frisch had committed those violations.

¶ 18. Attorney Frisch also did not contest the allegations in Count 2, which alleged that he had violated SCR 20:3.4(c)[4] by failing to obey court orders to produce specified items of discovery in three cases, and that he had violated SCR 20:3.4(d)[5] by failing to comply with legally proper discovery requests in those cases. The referee therefore concluded that the OLR had proven the allegations of Count 2.

██

¶ 19. Count 3 of the complaint alleged that Attorney Frisch had engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c),[6] by concealing certain MCDAO case files in his car, including the Brown Deer case file, and by making misrepresentations to Attorney Donohoo and others about those files. On this count the referee concluded that the OLR had failed to meet its burden of presenting clear, satisfactory, and convincing evidence of dishonesty, fraud, deceit or misrepresentation. She noted that there was no proof that Attorney Donohoo specifically asked about the location of the Brown Deer case file or directed Attorney Frisch to locate that file. She further stated that Attorney Frisch had testified,

---

[4] SCR 20:3.4(c) provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists; . . . ."

[5] SCR 20:3.4(d) states a lawyer shall not "in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party; . . . ."

[6] SCR 20:8.4(c) states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

without contradiction, that the reason the files were in his car was because he had been trying to keep up with his work by taking files home to work on them, but had been prevented from completing the necessary work by his consumption of alcohol in the evenings. The evidence simply did not clearly and convincingly prove that Attorney Frisch had attempted to hide his handling of cases by concealing case files in his car.

¶ 20. With respect to the level of discipline, the referee noted three aggravating factors. First, Attorney Frisch admitted multiple violations. Second, as a prosecutor with special responsibilities to victims of crime, Attorney Frisch's failure to follow discovery orders had caused harm to vulnerable individuals. Third, Attorney Frisch had extensive experience in the practice of law at the time of his misconduct, having practiced for over 30 years.

¶ 21. On the mitigating side of the ledger, the referee noted, among other things, that Attorney Frisch has never before been the subject of professional discipline and that his misconduct was not the result of dishonest or selfish motives. In addition, Attorney Frisch self-reported his alcohol dependence and his conduct to the OLR. He ultimately admitted the violations alleged in Counts 1 and 2 of the OLR's complaint. The referee also noted that Attorney Frisch had already suffered a lengthy suspension from his job without pay and that he had remained subject to a "Last Chance Agreement."

¶ 22. The referee also discussed the impact of Attorney Frisch's alcohol dependence on the appropriate level of discipline. She found that Attorney Frisch's failure to complete his work in 2004 and early 2005, including his failure to diligently and promptly prosecute his cases and to attend to discovery matters, was the result of his uncontrolled alcoholism, which had a

deleterious effect on his health. *See In re Disciplinary Proceedings Against Wood,* 122 Wis. 2d 610, 617, 363 N.W.2d 220 (1985) (". . . in appropriate circumstances, the disease of alcoholism may properly be considered in mitigation of the severity of the discipline to be imposed for misconduct"). In addition, the referee pointed out that Attorney Frisch has successfully rehabilitated himself from his alcohol dependence for several years, which this court has also treated as a mitigating factor. *See, e.g., In re Disciplinary Proceedings Against Fay,* 123 Wis. 2d 73, 77, 365 N.W.2d 13 (1985). Attorney Frisch also pursued treatment and rehabilitation at significant personal cost, checking himself into inpatient treatment facilities twice and expending approximately $20,000 of his own money to pay for the treatment. Moreover, the referee concluded that Attorney Frisch's satisfactory job performance over the last several years demonstrated that he was unlikely to engage in similar professional misconduct in the future.

¶ 23. Considering both the mitigating and aggravating factors, as well as other cases in which an attorney has been found guilty of failing to act with reasonable diligence and promptness, the referee concluded that a public reprimand would be an appropriate level of discipline.

■■

¶ 24. Under our well-established standard of review in disciplinary proceedings, we will affirm a referee's factual findings unless they are clearly erroneous. *See In re Disciplinary Proceedings Against Inglimo,* 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. We review a referee's conclusions of law, however, on a de novo basis. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. Finally, we determine the appropriate level

of discipline given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 25. Having fully reviewed the matter under these standards, we accept the referee's findings of fact. We note that neither party has appealed from the referee's report and recommendation or alleged that any factual finding was clearly erroneous. In addition, a large portion of the referee's factual findings was based on a stipulation of facts that the parties read into the record at the disciplinary hearing.

¶ 26. We also accept the referee's conclusions of law. There is no dispute at this juncture that Attorney Frisch committed the ethical violations alleged in Counts 1 and 2. With respect to Count 3, although it may have been possible to infer from the circumstances that Attorney Frisch kept files in his car in order to hide them from his supervisors at the MCDAO, it is equally possible to conclude that, given Attorney Frisch's condition and the specific facts of this case, he kept files in his car because, as he testified without contradiction, he intended to work on them at home in the evenings, but his alcohol consumption kept him from doing so. It is also equally plausible that, given his alcohol dependence, Attorney Frisch simply forgot or put out of his mind which files were actually in his car at any time. Thus, the OLR did not meet the required standard of clear, satisfactory, and convincing evidence of a violation of SCR 20:8.4(c).

¶ 27. Based on the violations proven by the OLR, we agree with the referee that the appropriate level of discipline is a public reprimand. In a recent decision involving another prosecutor, we imposed a public reprimand where the attorney not only failed to obey discov-

139

ery orders, but also made affirmative misrepresentations to a court about his compliance. *See In re Disciplinary Proceedings Against Kohler,* 2009 WI 24, 316 Wis. 2d 17, 762 N.W.2d 377. Attorney Frisch's failure to act with reasonable diligence and his failure to comply with discovery requests and orders are not more serious than making a misrepresentation to a judge after having failed to comply with discovery orders.

¶ 28. In addition, in the present case the referee specifically found that Attorney Frisch's misconduct was a result of his physiological dependence on alcohol. Of importance in such a situation is the fact that Attorney Frisch acknowledged his problem with alcohol, reported it to the OLR, and sought intensive treatment for his alcohol dependence, at significant personal expense. As the referee found, Attorney Frisch has detailed the steps he has taken and is taking to cope with his alcohol dependence, which have helped him to maintain complete sobriety for more than three years and to return to his position as a trusted member of the MCDAO.

¶ 29. We now turn to the issue of costs. The referee recommended that no costs be assessed against Attorney Frisch, reasoning that he had essentially stipulated to Counts 1 and 2 and that he had prevailed on Count 3, the only disputed count.

¶ 30. The OLR's statement of costs, however, recommended that the full amount of costs, $11,845.14, be imposed on Attorney Frisch. The OLR pointed out that although Attorney Frisch had ultimately stipulated to certain facts prior to the disciplinary hearing and had testified at the hearing that he was not contesting Counts 1 and 2, his answer to the complaint had admitted only some of the factual allegations underlying Counts 1 and 2 and had sought dismissal of the complaint in its entirety.

¶ 31. Attorney Frisch has objected to the imposition of any costs against him. He contends that he admitted the violations alleged in Counts 1 and 2. He states that he could have reached a stipulated resolution of this matter, except for the fact that the OLR required him to admit having violated SCR 20:8.4(c) and to consent to the imposition of a five-month suspension, which request he claims was due to the dishonest concealment charge. He emphasizes that he flatly denied any violation of SCR 20:8.4(c), and the referee agreed with him that there was no violation of that provision.

██

¶ 32. The court's general policy in disciplinary proceedings in which misconduct is found is to impose the full costs of the proceeding against the respondent attorney. SCR 22.24(1m).[7] We have discretion, however, to reduce the amount of costs where we believe there are "extraordinary circumstances." We conclude that this

---

[7] SCR 22.24(1m) states:

> The court's general policy is that upon a finding of misconduct it is appropriate to impose all costs, including the expenses of counsel for the office of lawyer regulation, upon the respondent. In cases involving extraordinary circumstances the court may, in the exercise of its discretion, reduce the amount of costs imposed upon a respondent. In exercising its discretion regarding the assessment of costs, the court will consider the submissions of the parties and all of the following factors:
>
> (a) The number of counts charged, contested, and proven.
>
> (b) The nature of the misconduct.
>
> (c) The level of discipline sought by the parties and recommended by the referee.
>
> (d) The respondent's cooperation with the disciplinary process.
>
> (e) Prior discipline, if any.
>
> (f) Other relevant circumstances.

case presents "extraordinary circumstances" that warrant imposing less than the full costs of this disciplinary proceeding, although we do not agree with the referee's suggestion that no costs should be imposed. Most importantly, Attorney Frisch conceded Counts 1 and 2, and he prevailed on the only count that was actually litigated at the disciplinary hearing, Count 3 alleging misrepresentation by Attorney Frisch.

¶ 33. Under the first factor identified in SCR 22.24(1m)(a), the number of counts charged, contested, and proven, we note that the OLR initially charged Attorney Frisch with three counts of professional misconduct and sought to suspend his license to practice law for five months. If only the first two counts had been alleged, the case could have been easily resolved by stipulation without the need for a hearing. The referee found that Attorney Frisch had not contested the allegations in these counts. Where a disciplinary matter is resolved by stipulation at the beginning of the proceeding, we have generally not imposed costs. *See, e.g., In re Disciplinary Proceedings Against Nussberger,* 2009 WI 103, ¶¶ 18, 24, 321 Wis. 2d 576, 775 N.W.2d 525 (not imposing costs and noting OLR's policy is not to seek costs where respondent attorney enters into comprehensive stipulation); *In re Disciplinary Proceedings Against Young,* 2006 WI 109, ¶¶ 21–22, 296 Wis. 2d 36, 718 N.W.2d 717 (not imposing costs where respondent attorney entered into stipulation admitting misconduct even after a referee was appointed).

¶ 34. However, the presence of the third count alleging that Attorney Frisch, an assistant district attorney, had engaged in "conduct involving dishonesty, fraud, deceit or misrepresentation" in violation of SCR 20:8.4(c) effectively left Attorney Frisch with no viable course of action other than fully litigating the case in

142

order to avoid a finding of a violation of SCR 20:8.4(c) and a possible lengthy suspension. Any finding of such a violation and the imposition of such a lengthy suspension would have greatly undermined Attorney Frisch's effectiveness as a prosecutor and could even have led to the termination of his employment. He therefore was placed between the proverbial "rock and a hard place." He could either give in to the OLR's misrepresentation allegation and risk losing his livelihood or fight the misrepresentation charge and possibly face a large cost assessment even if he ultimately won on that count. It was this forced choice that led to the litigation of the matter and caused most of the expenses to be incurred.

¶ 35. At the end of that litigation process, however, the referee found that the OLR had not proven a violation of SCR 20:8.4(c) under the applicable burden of persuasion. We have upheld that conclusion and have dismissed that count, meaning that Attorney Frisch has prevailed on the only count that necessitated a disciplinary hearing. Moreover, the OLR has not appealed from the referee's recommendation of dismissal of that charge.

¶ 36. With respect to the nature of the misconduct, the violations found by the referee and this court involved Attorney Frisch's lack of diligence as well as his failure to produce discovery and to comply with discovery orders. While these incidents of misconduct are not inconsequential, they are clearly not of the same seriousness as the misrepresentation allegation on which Attorney Frisch prevailed.

¶ 37. The difference in seriousness is borne out by the disparity between the level of discipline sought and the level of discipline recommended and imposed. The OLR sought a five-month suspension for all three counts. After concluding that the OLR had not proven the misrepresentation count, the referee recommended,

143

and we have agreed, that a public reprimand is the appropriate level of discipline.

¶ 38. Although Attorney Frisch fully litigated the misrepresentation count, the OLR has not alleged that Attorney Frisch failed to cooperate with its investigation or this disciplinary proceeding. Moreover, although Attorney Frisch has been practicing law for more than 30 years, he has never before been the subject of professional discipline.

¶ 39. Finally, we note that Attorney Frisch has already been disciplined by his employer and has expended a substantial amount of his own money to promote his rehabilitation. After he had to seek inpatient alcohol dependence treatment on two separate occasions in 2005, he was formally reprimanded by the district attorney and was suspended without pay for 22 working days, losing approximately a month's salary. He also was required to enter into a "Last Chance Agreement," the violation of which could have resulted in the termination of his employment. In addition to losing a month's salary, Attorney Frisch also expended more than $20,000 in treatment expenses in an effort, apparently successful so far, to effect substantial changes in his lifestyle and to return to a productive career.

¶ 40. In light of all of these factors, we conclude that it would not be just to impose nearly $12,000 in litigation costs on Attorney Frisch. Since the primary focus of the litigation in this case involved the misrepresentation count on which Attorney Frisch prevailed, we determine that it would be fair to require him to pay $1,500 in costs.

¶ 41. This result is consistent with our decision in *In re Disciplinary Proceedings Against Molinaro*, 2009 WI 61, 318 Wis. 2d 375, 769 N.W.2d 458. In that case, the OLR charged Attorney Molinaro with 13 counts of

misconduct. The referee found that the OLR had not met its burden of proof as to five of those counts. On appeal, we concluded that the OLR had also failed to prove a sixth count dealing with whether Attorney Molinaro had taken an excessive fee out of a settlement. We upheld the referee's findings of misconduct on the other seven counts. In our discussion regarding the issue of costs, we noted that, like the present case, the one count alleging an excessive fee was the "most hotly debated issue" in the case that "accounted for a substantial amount of the total time—and resulting fees and costs—expended by the OLR in prosecuting" the matter. *Id.*, 318 Wis. 2d 375, ¶ 67. In light of the dismissal of that count and other factors,[8] we concluded that the cost amount should be reduced from nearly $24,000 to $12,000. We found such a substantial reduction appropriate even though the remaining counts of misconduct still warranted a 60–day suspension. We likewise conclude that Attorney Frisch should be required to pay only a portion of the costs of this proceeding.

¶ 42. IT IS ORDERED that James W. Frisch is publicly reprimanded for his professional misconduct.

¶ 43. IT IS FURTHER ORDERED that within 60 days of the date of this order, James W. Frisch shall pay to the Office of Lawyer Regulation $1,500 as the costs of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of James W. Frisch to practice law in Wisconsin shall be suspended until further order of the court.

---

[8] For instance, like Attorney Frisch, Attorney Molinaro had practiced law for more than 30 years without a prior disciplinary incident. In addition, the discipline sought by the OLR against Attorney Molinaro, a two-year suspension, was substantially greater than the 60–day suspension that was ultimately imposed.

¶ 44. SHIRLEY S. ABRAHAMSON, C.J. (*concurring in part, dissenting in part*). I concur in the court's *per curiam* opinion relating to the Code violation and the discipline. I dissent from the court's decision to reduce the costs imposed on Attorney Frisch.

¶ 45. The court's opinion reducing the costs to be imposed ignores the applicable rule on costs, the facts of this particular case, and the court's precedents regarding the imposition of costs. When those items are properly considered, the only reasonable conclusion is that the case does not present "extraordinary circumstances" that would justify a reduction in the costs assessed against Attorney Frisch, whose misconduct was the reason for this disciplinary proceeding. Consequently, I dissent from the portion of the court's opinion regarding the imposition of costs.

¶ 46. *The Rule on Costs:* As the majority opinion notes, this court's general rule regarding the imposition of costs is to impose all of the costs of a disciplinary proceeding on the respondent attorney whose conduct necessitated the proceeding unless there are "extraordinary circumstances." SCR 22.24(1m).

¶ 47. SCR 22.24(1m) was adopted in 2006.[1] It has an interesting history that should inform the imposition of costs in the present case. Much of the history leading up to the adoption of the 2006 rule is described in my concurring opinion in *In re Disciplinary Proceedings Against Konnor,* 2005 WI 37, 279 Wis. 2d 284, 694 N.W.2d 376.

---

[1] *See In the Matter of the Petition for Amendment to Supreme Court Rules relating to Cost Assessments in the Lawyer Regulation System,* S. Ct. Order 05–01, 2006 WI 34, 287 Wis. 2d xiii (eff. May 1, 2006).

¶ 48. Until 1999, the court had levied less than full costs on the disciplined lawyer in only one case. Beginning in 1999, numerous dissents varying "in length, vigor, and vitriol, as is each justice's prerogative"[2] were filed, objecting to the imposition of full costs on the disciplined lawyer and instead favoring the shifting of these costs from the disciplined lawyer to the members of the bar. The dissents, except those favoring the levying of costs on the basis of counts proved,[3] offered no principles, criteria, or guidelines to assist the court in fairly and equitably exercising its discretion to levy less than full costs.

¶ 49. The continuing controversy among the justices about the imposition of costs on disciplined lawyers resulted in the court's requesting that the Board of Administrative Oversight, in conjunction with the State Bar, develop a comprehensive approach regarding the assessment of costs in OLR matters for the court's consideration. A petition for a rule regulating the imposition of costs[4] was filed and a survey of the bar on the issue was undertaken.[5]

---

[2] *In Disciplinary Proceedings Against Konnor,* 2005 WI 37, ¶ 53, 279 Wis. 2d 284, 694 N.W.2d 376.

[3] For Justice Butler's recommendation allocating costs on the basis of counts proved, see *In the Matter of the Petition for Amendment to Supreme Court Rules relating to Cost Assessments in the Lawyer Regulation System,* S. Ct. Order 05–01, 2006 WI 34, 287 Wis. 2d xiii (eff. May 1, 2006) (Butler, J., dissenting).

[4] *In the Matter of the Petition for Amendment to Supreme Court Rules relating to Cost Assessments in the Lawyer Regulation System,* S. Ct. Order 05–01, 2006 WI 34, 287 Wis. 2d xiii (eff. May 1, 2006).

[5] The results of the 2005 Bench Bar Survey relating to the allocation of costs in attorney discipline cases are as follows:

¶ 50. The rule proposed, but not adopted by the court, was that after the referee's report was filed, the OLR would submit to the referee the statement of costs, the respondent lawyer would file an objection, if any, and the OLR would then file a rebuttal. The referee would recommend to the court the costs to be imposed on the lawyer after considering factors including "(a) the number of counts charged, contested and proven; (b) the severity of counts charged, contested and proven; (c) the level of discipline sought by the parties and recommended by the referee; (d) the respondent's cooperation with the disciplinary process; and (e) the respondent's ability to pay." The supreme court was to consider the submissions of the parties and the recommendation of the referee.

¶ 51. After a public hearing and open administrative conference, this proposed rule was **NOT** adopted by the court. The court refused to delegate to the referees the tasks of determining the imposition of costs or making recommendations about costs to the court. The court had sound reasons for this position. Referees do not know the full costs and attorney fees when the referees file their reports. The referees do not have a statement of the attorney fees and cannot evaluate to

---

Most respondents split between continuing the current assessment policy (37%) and permitting apportionment of costs (36%). Another 17% feel the Court should adopt the "English Rule," 9% feel it should it should adopt the "American Rule," and a handful of respondents checked a combination of methods. Nearly one-half (47%) of judges feel the Supreme Court should continue its current assessment policy, while lawyers split between permitting apportionment of costs (37%) and continuing the current policy (33%).

Executive Summary, State Bar of Wisconsin 2005 Bench-Bar Survey, at 5 (*available at* http://www.wisbar.org/AM/ Template.cfm?Section=Research_and_Reports&TEMPLATE=/ CM/ContentDisplay.cfm&CONTENTID=57903).

what issues the attorneys devoted time. Furthermore, the imposition of costs and fees by a single court would provide uniformity.

¶ 52. The "cost controversy" among the members of this court culminated in the adoption of the present rule, over the dissents of Justices Prosser, Butler, and Roggensack.

¶ 53. Nevertheless, referees continue to make recommendations about costs. Indeed in the present case, the referee recommended that no costs be assessed to the attorney. The referee's full discussion about costs, without the benefit of OLR's statement of costs, is as follows: Attorney Frisch "admitted the factual allegations underlying Counts One and Two of OLR's complaint and has not disputed that those facts establish the violations asserted in those counts. It is recommended that Count Three be dismissed. Under these circumstances, Frisch should not be required to pay OLR's costs and attorney fees in this matter. *See, e.g., In re Disciplinary Proceedings Against Young,* 2006 WI 109, ¶¶ 21–22, 296 Wis. 2d 36, 718 N.W.2d 717."[6] The referee made no reference to "extraordinary circumstances."

¶ 54. The court, including the dissenters, must follow the plain language of the rule adopted. The rule

---

[6] The referee's reliance on *Disciplinary Proceedings Against Young,* 2006 WI 109, ¶¶ 21–22, 296 Wis. 2d 36, 718 N.W.2d 717, is misplaced. In that case, Attorney Young, the respondent lawyer, entered into a full stipulation with the OLR regarding the facts, the violation of the code, and the discipline. A referee had been appointed before the stipulation was executed. The OLR did not seek to impose costs on Attorney Young. The referee recommended imposing costs on the lawyer. This court concluded that under those circumstances no costs should be imposed on Attorney Young.

the court adopted clearly sets forth the "general policy . . . that upon a finding of misconduct it is appropriate to impose all costs, including the expenses of counsel for the office of lawyer regulation" upon the disciplined attorney. The rule further explains that in cases involving "extraordinary circumstances," the court may exercise its discretion to reduce the amount of costs and fees imposed on the disciplined attorney. The rule then lists several factors to guide the court's imposition of costs after the court finds "extraordinary circumstances."

¶ 55. To impose less than full costs on the lawyer disciplined, the court must first find extraordinary circumstances.

¶ 56. The majority fails to explain what the "extraordinary circumstances" are in the present case. The rule does not define "extraordinary circumstances." In interpreting statutes, rules, and other documents, the court is very fond of examining the dictionary to define words. "Extraordinary" is defined in the dictionaries as meaning beyond what is ordinary and usual; the word means "not usually associated with" the subject being discussed.

¶ 57. The phrase "extraordinary circumstances" clearly requires the presence of factors that are not present in many disciplinary proceedings even though the phrase is incapable of being defined in a manner that encompasses all possible scenarios. The majority opinion fails to demonstrate facets of the present disciplinary proceeding that are not often found in disciplinary cases.

¶ 58. It is not extraordinary or unusual for the OLR to prosecute all misconduct counts for which the Preliminary Review Committee found "cause to proceed" and for the referee to conclude that one or more

counts are not proved. It is not extraordinary or unusual for a prosecutor to be unable to prove all counts even after a finding of probable cause. There is no claim in the present case that the counts alleged by the OLR were wholly without prosecutorial merit or that OLR's pursuit of Count 3 was unreasonable, improper, or frivolous.

¶ 59. The majority is interpreting and applying the rule as if the court had adopted the substance of the rule originally proposed and defeated. If the majority wants to change the rule the court adopted, the majority has to do so using our rule-making function, our quasi-legislative function, not our case deciding function. The court is amending rules in an adjudication. That's a no-no.

¶ 60. At bottom, the instant proceeding arose out of Attorney Frisch's conduct. The rule adopted appropriately declares that the disciplined lawyer should bear to the extent he or she is able, except under extraordinary circumstances, the costs and attorney fees of the proceeding rather than the court transferring the costs to the other attorneys in the state who have not engaged in misconduct.

¶ 61. The court is ignoring the plain text of SCR 22.24(1m), skipping over the need to find "extraordinary circumstances," and going straight to the factors that guide the court in imposing costs once the court has found extraordinary circumstances.

¶ 62. The court order adopting the rule on costs provides for court review of the rule in the fall of 2010. That will be the time to change the rule, if a majority of the court wishes to do so. The rule should not be changed in this case.

¶ 63. *$1,500 Fee Not Based on Record:* Before I turn to the factors the court applies, I must point out

151

that the majority opinion imposes $1,500 costs on Attorney Frisch. No explanation is given for this number. The number is not related to anything in the record. How does this jibe with our numerous opinions saying that a court should explain its exercise of discretion?

¶ 64. Just as the $1,500 has no basis in the record, the factors upon which the majority opinion justifies its reduction of costs have no basis in the record.

¶ 65. *Reduced Costs Not Justified:* First, the majority opinion states that Attorney Frisch conceded Counts 1 and 2. This statement is only partially true, misrepresents the record, and is misleading. As the OLR points out, Attorney Frisch's answer to the OLR's complaint admitted only some of the facts underlying Counts 1 and 2. His answer demanded dismissal of the complaint *in its entirety.* Moreover, Attorney Frisch's own objection to costs also indicates that the issues surrounding Counts 1 and 2 were not fully resolved even after a factual stipulation had been reached prior to the disciplinary hearing. In his objection to costs, Attorney Frisch states that the stipulation "included *substantially all* of the facts on which OLR based Counts [1] and [2] of its complaint," and that at the hearing the OLR had "*largely* devoted its case to attempt to prove up Count [3]" (emphasis added).

¶ 66. Thus, while Attorney Frisch may have conceded misconduct under Counts 1 and 2 by the end of the disciplinary hearing, his answer and cost objection undermine the majority's assertion that in the absence of Count 3 he would have entered into a comprehensive stipulation that would have avoided the necessity of the appointment of a referee and the incurring of legal fees by the OLR. His answer indicates that even in the absence of Count 3, costs would have been incurred by

the OLR and a referee. Consequently, the majority's citation to the *Nussberger* and *Young* cases, in which no costs were imposed because the respondent attorney entered into a comprehensive stipulation at the beginning of a disciplinary proceeding, does not demonstrate that this case presents "extraordinary circumstances" justifying a reduction in costs.

¶ 67. Second, the majority points to the fact that Attorney Frisch prevailed on Count 3, which alleged a violation of SCR 20:8.4(c) and on which the bulk of the disciplinary hearing clearly focused. Merely prevailing on one or more of the counts alleged in a disciplinary complaint, however, is not sufficient to support a reduction or proration of costs.

¶ 68. Indeed, even when a respondent attorney has prevailed on five out of seven counts, we have refused to depart from our practice of assessing full costs against a respondent attorney who has been found to have engaged in some professional misconduct. *See In re Disciplinary Proceedings Against Polich,* 2005 WI 36, ¶¶ 29–30, 279 Wis. 2d 266, 694 N.W.2d 367. Moreover, as was the case in *Polich,* there is no indication that Count 3 in this case was without prosecutorial merit or that the costs incurred by the referee and the OLR in this matter were unreasonable or unnecessary. The bottom line is that Attorney Frisch prevailed on one count, but was found to have committed the misconduct alleged in two other counts. This does not qualify as an "extraordinary circumstance."

¶ 69. In addition, while Attorney Frisch is to be commended for seeking treatment for his alcohol dependence and for paying for a significant portion of that treatment out of his own funds, his expenditure of substantial sums for treatment does not address who should be responsible for the costs incurred in this

disciplinary proceeding—either Attorney Frisch or the general membership of the bar in this state (through annual assessments). Since it was the misconduct of Attorney Frisch that caused the necessity of this disciplinary proceeding and the concurrent expenditure of time and money, I cannot conclude that his expenditure of personal funds for other reasons, even if commendable, should excuse him from responsibility for the costs of this disciplinary proceeding, with the result that those costs will be shifted to the other attorneys of this state.

¶ 70. *Precedent Contrary to Reduction of Costs:* In the present case, Attorney Frisch was found to have committed misconduct on two of the three original counts. In several cases, one or more counts are dismissed and the full costs are imposed. This case therefore is simply a matter of an attorney prevailing on one count while being found to have committed misconduct on other counts. That is not an "extraordinary circumstance," and the court should follow its general policy of imposing full costs. The costs of the proceeding against the attorney should not be foisted upon the lawyers in the state of Wisconsin.

¶ 71. For the foregoing reasons, I concur in part and dissent in part.

¶ 72. I am authorized to state that Justices ANN WALSH BRADLEY and N. PATRICK CROOKS join this opinion concurring in part and dissenting in part.